## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    **MEMORANDUM OF LAW & ORDER**
                                     Criminal File No. 97-147(6) (MJD/JJK)

JAMIE GONZALEZ,

        Defendant.

Katherine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.

Jamie Gonzalez, pro se.

     This matter is before the Court on Defendant Jamie Gonzalez's Pro Se

Motion for Reconsideration re: Order on Motion for Compassionate Release from

Custody and Second Request for Compassionate Release from Custody.  (Doc.

383.)

     On March 1, 1999, Defendant pleaded guilty to Aiding and Abetting

Robbery Affecting Interstate Commerce in violation of 18 U.S.C §§ 1951 and 2.

(PSR ¶ 1.)  On June 23, 1999, Defendant was sentenced to a term of 120 months of

imprisonment; 60 months concurrent and 60 months consecutive to a state

sentence.[1] (Doc. No. 273.)  At this time, Defendant has completed his state

sentence is serving his consecutive federal sentence.

Defendant relied on two bases for release in his original motion for

compassionate release:  rehabilitation and the COVID-19 pandemic.  (Doc. 382.)

Defendant seeks reconsideration of its order denying compassionate release on

these bases.  (Doc. 383 at 4.)  Defendant also asserts two new bases for

compassionate release: (1) his desire to care for his elderly mother; and (2) a

tumor in a bone of his left ring finger, which the Court interprets as his Second

Request for Compassionate Release from Custody.  (Doc. 384-2 at 1.)  The Court

will first address Defendant's request for reconsideration and will then address

Defendant's second request for compassionate release.  Defendant bears the

burden to establish he is eligible for a sentence reduction.  United States v. Jones,

836 F.3d 896, 899 (8th Cir. 2016); United States v. Ocanas, 516 F. Supp. 3d 936, 938

(D. Minn. 2021) (citing Jones, 836 F.3d at 899).

---

[1] At the time of sentencing, Defendant was serving a sentence in Michigan for assault with intent to commit murder, a firearms violation and assault to commit great bodily harm. (PSR ¶ 41.) He was sentenced to 20 to 45 years on the first count, two years on the second count to be served consecutively, and 160 months to 20 years on the third count, concurrent to the first count. (Id.)

The Court has carefully reviewed Defendant's motion and additional filings and concludes that Defendant has still failed to show that "extraordinary and compelling reasons" mandate his release.  <u>See</u> U.S.S.G. § 1B1.13.[2]

## I.   Compassionate Release Based on Defendant's Request for Reconsideration

### A.   Compassionate Release Due to Rehabilitation

As discussed in the Court's previous order, Defendant has failed to show that extraordinary and compelling reasons exist based on his rehabilitation. (Doc. 382 at 7-8.)  With his current motion, Defendant submits evidence of training courses he has completed while incarcerated and states that he plans to work when released.  While the Court commends Defendant for using his time in prison to gain job skills that will be valuable once he is released, release is not warranted based on Defendant's rehabilitation.  "Prisoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve

---

[2]U.S.S.G. Policy Statement § 1B1.13 only refers to motions for release brought by the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A). However, this Court as well as other courts in this District and elsewhere have construed § 1B1.13 to apply to motions brought by a defendant under § 3582(c)(1)(A). <u>See e.g.</u>, <u>United States v. Warren</u>, 456 F. Supp.3d 1083, 1085–86 (D. Minn. 2020) (finding that part of § 1B1.13 that states "[u]pon motion of the Director of the Bureau of Prisons" was superseded by the First Step Act, and applies factors set forth in § 1B1.13 to motions brought by a defendant under § 3582(c)(1)(A)).

themselves. . . . [T]here is nothing 'extraordinary and compelling' about a prisoner who simply does the things that prisoners are supposed to do." <u>United States v. Logan</u>, 532 F. Supp. 3d 725, 735 (D. Minn. 2021); <u>see also</u> 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

### B.  Compassionate Release Due to COVID-19

Although Defendant had not exhausted his administrative remedies at the time he filed his first request for compassionate relief based on the COVID-19 pandemic, the Court addressed Defendant's claim on the merits.  (Doc. 382 at 5-6.)  The Court found that Defendant did not provide any extraordinary and compelling reasons based on COVID-19 because Defendant made no health-related claims and provided no evidence that his health had deteriorated since his May 1999 PSR, which stated he was in good health.  Defendant's BOP medical records indicated no dramatic shifts in this physical condition since that time.  (<u>Id.</u> at 6.)  The Court also noted that Defendant refused the COVID-19 booster shot; that the BOP had COVID-19 protocols in place; and that FCI Petersburg Medium, where Defendant was housed, reported zero active cases among staff and inmates, 1 inmate death, and that 252 inmates and 43 staff have recovered from the virus.  (<u>Id.</u>)

4

Defendant has now exhausted his administrative remedies and this part of

Defendant's motion is ripe.  Defendant's current motion mentions the Delta and

Omicron variants but fails to indicate how he is at a greater risk from these

variants because of any health condition.  Defendant also received a COVID-19

booster shot in February 2022, which provides additional protection from the

disease.  (Id.; Gov. Ex. 1 at 27.)   Therefore, COVID-19 is not a basis upon which

to grant this motion.

### C.    Conclusion

Defendant's request for reconsideration is denied.

## II.    Defendant's Second Request for Compassionate Release

### A.    Compassionate Release Due to Defendant's Desire to Care for his Elderly Mother

Defendant seeks compassionate release, in part, to care for his elderly

mother who has "illnesses."  (Doc. 384-1 at 3.)  Defendant proposes to "help [her]

get around and spend her last years here on Earth."  (Id. at 4.)  Although U.S.S.G.

§ 1B1.13 makes provision for some family circumstances to be considered

extraordinary and compelling reasons, care of an elderly parent is not one of

them.  See U.S.S.G. § 1B1.13 cmt. n.1(C) (listing the death or incapacitation of a

defendant's minor child's or children's caregiver and the "incapacitation of the

defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" as extraordinary and compelling family circumstances).  Therefore, many courts hold they cannot grant compassionate release based on a desire to help elderly parents.  See United States v. Franik, No. CR 10-274 (DWF/LIB), 2021 WL 5989939, at *3 (D. Minn. Dec. 17, 2021) (citing United States v. Ingram, Cr. No. 2:14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."); United States v. Henry, Cr. No. 13-91, 2020 WL 3791849, at *4 (E.D.N.Y. July 6, 2020) ("Care of parents is not a qualifying basis for release."); United States v. Goldberg, Cr. No. 12-180, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (desire to help care for elderly parents is admirable but does not qualify as an extraordinary and compelling reason under the Statement)).

However,

[C]ourts disagree over whether Congress intended the First Step Act to expand the definition of extraordinary and compelling reasons beyond that set forth in § 1B1.13.  While some courts adhere to the pre-First Step Act policy statements, other courts [have] ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons.

United States v. Rodd, 966 F.3d 740, 745 (8th Cir. 2020) (cleaned up and citations

omitted).

Even if the Court were to adopt an expansive view of its interpretive role

and address this claim under the "catchall provision" of U.S.S.G. § 1B1.13

comment note 1(D), it would find Defendant has not met his burden on this

argument.[3]  See United States v. Marshall, No. 3:10-CR-30017-RAL, 2021 WL

1017489, at *4 (D.S.D. Mar. 17, 2021) (addressing similar arguments under the

catchall provision and denying defendant's motion).  Defendant merely states

that he has an elderly parent, a situation faced by many, perhaps most, long-term

prisoners.   He also states that his mother has "illnesses," without any other

explanation.  Thus, Defendant has not shown that his mother is "incapacitated

and [Defendant] is the only available caregiver."  United States v. Proudfoot, No.

CR 14-192 ADM/LIB, 2020 WL 5500459, at *2 (D. Minn. Sept. 11, 2020)

(addressing defendant's desire to care for parents and quoting U.S.S.G. § 1B1.13

cmt. n.1(C), which applies to incapacitated spouses).   Defendant's desire to care

---

[3] The "catchall provision" of U.S.S.G. § 1B1.13 comment note 1(D) provides for
"an extraordinary and compelling reason other than, or in combination with, the
reasons described in subdivisions A through C."

for his mother, while commendable, is not a basis upon which to grant compassionate release.

**B.      Compassionate Release Due to Defendant's Tumor**

In January 2022, Defendant was diagnosed with a lytic lesion on his left ring finger.   (Docs. 383 at 5-6; 384-2 at 1; 387 at 7.)   A lytic lesion is a type of bone tumor that can be either benign or cancerous.   An MRI of Defendant's finger was not definitive.   (Gov. Ex. 1 at 35 (". . . lesion of the ring finger . . . as detailed above. . . .   Most commonly this is related to a benign etiology, such as an enchondroma, however, the findings are nonspecific by MRI and malignant causes cannot be excluded. Correlation with radiology is recommended.").)   Defendant's doctor recommended surgery, but Defendant declined.   (Id. at 4; Doc. 383 at 5-6.)

U.S.S.G. § 1B1.13 comment note 1(A) provides that a defendant's medical condition that "diminish[es] the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover" constitutes an extraordinary and compelling reason for compassionate release.

Here, the nature of Defendant's tumor is unknown.   Defendant does not take issue with the Government's statement that a biopsy is necessary to confirm

8

whether the tumor is benign or malignant.  However, Defendant declined

surgery, which, of course, is his right.  There is no indication in the medical

records that the tumor represents a terminal illness or that he is unable to

function in prison because of the tumor.  More importantly, Defendant is

currently receiving appropriate care, including treatment from a hand surgeon

outside the prison.  (Gov. Ex. 1 at 9, 14, 16, 35-39);  see United States v. Ingram,

Crim. No. 14-303(2) (DWF/BRT), 2021 WL 1840024, at *2 (D. Minn. May 7, 2021)

(noting that the court previously found the defendant was receiving appropriate

medical care in prison);  United States v. Curaba, No. CR. 14-50065-JLV, 2021 WL

616316, at *5 (D.S.D. Feb. 17, 2021) (denying motion for compassionate release, in

part, because the defendant was receiving appropriate medical care in prison).

Defendant's tumor is not a basis upon which to grant compassionate release.

### C.    Conclusion

Defendant's Second Request for Compassionate Release from Custody is

denied.

## III.   Consideration of Federal Sentencing Factors

Even if the Court had determined that Defendant provided "extraordinary

and compelling reasons" meriting early release, his motion would still be denied.

In March 1999, the Court sentenced Defendant to 120 months in prison for

Aiding and Abetting Robbery Affecting Interstate Commerce in violation of 18

U.S.C. § 1951.[4]  Defendant was part of a conspiracy to rob Asian-owned jewelry

stores in the Twin Cities area.  (Doc. 70 (Superseding Indictment) ¶¶ 1-6, 38.)   He

was paid to rob the stores.  During one of Defendant's attempted robberies, a

jewelry salesman tried to escape in his car.  Defendant shot out his tires and one

of his accomplices shot the salesman.  Defendant has a long criminal history,

including drug crimes, firearms crimes, assault, and attempted murder.

The sentence the Court gave Defendant, which was the bottom of his

guidelines range, provided just punishment for the offense, reflected the

seriousness of the offense, and promoted respect for the law.  At the time of

sentencing, the Court stated no mitigating or aggravating circumstances existed

in this case that were not considered by the Sentencing Commission.  (Doc. 275 at

6.)  That continues to be the case.  The purposes of sentencing are served by

Defendant completing his sentence.  See United States v. Rodd, No. CR 13-230

ADM/JSM, 2019 WL 5623973, at *4 (D. Minn. Oct. 31, 2019) ("Even assuming

Congress intended to expand the use of compassionate release with the First Step

---

[4] Sixty months of this sentence were to run concurrently with Defendant's then-current State of Michigan sentence imposed in case #9772899FC and 60 months were to run consecutive to that sentence.  (Doc. 273.)

Act, the Section 3553(a) factors present at sentencing have not changed. . . . [T]he

Court continues to find that a sentence of 87 months is just and fair under the

totality of the circumstances."), aff'd, 966 F.3d 740 (8th Cir. 2020).

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Defendant's Pro Se Motion for Reconsideration re: Order on Motion for

Compassionate Release from Custody and Second Request for Compassionate

Release from Custody **(Doc. 383)** is **DENIED**.


Dated:  June 28, 2022                          s/Michael J. Davis
                                               Michael J. Davis
                                               United States District Court


11